v. Zeus Networks, LLC v. Zeus Networks, LLC    All righty, whenever you're ready, you may begin. Thank you, Your Honor. May it please the Court, I'm Jeffrey Geldins from Lewis-Brisbois. On behalf of the appellant, Zeus Networks, LLC. We're here on a motion, the denial of a motion to compel arbitration under the Federal Arbitration Act. The district court below decided that the contract didn't include the acceptance of the arbitration clause, which is attached by a hyperlink on the page at which you agree to the contract. We have a, we filed supplemental authority with the court, the Miami Dolphins case. We think that that case obviously provides a good point on what the issue is before the court and why we're here, which is click-wrap, browse-wrap, whatever you call it, we're really just talking about contract law, which obviously is one of the driest subjects that all of us had when we were in first year law school, but it matters here, and the reason is offering acceptance, of course. But you would agree this is a browse-wrap under Florida law? I think it's called a browse-wrap, and I would point to the MetroPCS as well as the Miami Dolphins case. I think, though, browse-wrap is a broader term than we've understood this far, because I think browse-wrap can include it at the bottom of the page, and that's a lot of what the plea plaintiff's cases are in situations where you have a link that says, oh, by the way, if you use our website, there's all these unknown terms that you might have to comply with, and that's not what this case is, and that's why we're here, is because the district judge focused a lot on the specific type and the place in which it was found, rather than considering what the nature of the offer was, and you can see that in the order, because the order the judge talks about, he says, well, all the other elements of that sentence were clear and accepted, but not this one, and it's because of the link, and there are two errors with that. The first is it imposes some sort of bright line with regard to whether the link is and thus steps over Florida law regarding incorporation of documents and contracts, but second, it unfairly places these browse-wraps, as Your Honor pointed out, on lesser footing, and there's no authority for that, and in fact, the U.S. Supreme Court has said that you can't really treat, just because an arbitration agreement is the agreement at issue, as something else, and the key cases that this Court has decided, of course... Can I ask you a quick question? You've given us this screenshot, and this is just from my understanding of what it really looks like in real life when you pull up the webpage. Was the subscription page that Tejon used to subscribe scrollable, or did all the information shown in the screenshot appear at once? It's an iOS device, so it pops up. It's like your phone. Okay, so it's all on... That screenshot shows the initial screen when you're going on to the app. Correct, and it's an iOS device, so it's not like the website pages where you get a pop-up window or something like that. It's his phone, and so that's the screen. So whatever size phone he or any other plaintiff has is what dictates this, and so that's of course one of the issues why we're here with the Court, is we wanted to kind of go through that in this colloquy and explain the idea that the browse-wraps that we're talking about a lot of times are situations where you have a pop-up window, or you have an in-page that has a situation like that. But I'd also like to point the Court, obviously the Miami Dolphins case is recent authority of the 3rd District, but this Court had already applied a similar precedent, and we cited in the briefs is that Dye vs. Temco products case, and that case was pretty clear, and it said, you know, everybody knows that you're accepting the terms of the product, but it also does it in terms of contract law, which is that the vendor, when they give you something, they say, this is the product I'm giving you, and these are the terms and conditions of that product, and there, much like in the Miami Dolphins case, you have a situation where the roofers are accepting on behalf of the plaintiff. And look, we're not talking about agency law here, but the fact is that if, in fact, under agency law it's a valid agreement, then here, where you have the person actually looking at the document and not maybe clicking on it or otherwise, you have a situation where it's accepted. And, you know, that really fundamentally is why we think, why we have appealed the order, because the trial judge really focused too much on the specific fonts and the nature of, you know, the manner of the type. And again, yes, Your Honor. I'm sorry to interrupt, but can you direct me to any Florida cases that, where the hyperlinked terms of service are both placed below an acceptance button and not presented in some similarly, some kind of contrasting color other than, I mean, because it looks like this is in gray. It's black and white from my understanding, Your Honor. And it's in color. Again, that's, first off, that's another point, and thank you for reminding me. The evidence in this case is unrelated to any color perception or any kind of what color is required. And so to the extent that the challenge to the arbitration agreement relates to, I did not perceive this, as opposed to I was unable to read it or it's too small as a matter of law, that gets us to two points in the appellee's brief, which is first the standard of review. We say it's legal. I'm sorry, and maybe I just missed it. Is there any Florida case where the court has enforced hyperlinked terms of service when both they were placed below an acceptance button and they were not presented in a contrasting color? That's my understanding of the Dolphins case is that it was a contrasting color because it was in the Dolphins colors. Right. It was the aqua color and then you have the white of the fonts. So the question is, is there any Florida case that you're aware of where the court has enforced hyperlinked terms of service when both the hyperlinked terms of service are below the acceptance button like they are here and they are not in a contrasting color to the rest of the type there? I would point the court to that case. That case is one where the contrasting color and it's also part of... I think maybe I'm just not asking the question right. So in that case, the terms are in aqua or something, right? Yes. In this case, the terms are in black, right? They're in black on a white background, yes. Just as they would on paper, yes. And the rest of the terms are also in black and white, right? Yes, the ones at the district court, yes. Now in the Miami Dolphins case, the rest of the terms are not in blue, right? In the aqua. Only the part that says terms and conditions is in the aqua, right? But the rest of the whatever is there is not in that same color. Isn't that right? Can I read the language from the Dolphins case? Sure, if it answers the question. I think it does and it may answer either the contrast or the case itself. It says here that between the user login and the sign in button, the account manager website displayed the button, the following notice, and then it has the language. The bolded phrases were hyperlinked and printed in aqua, a different color than the rest of the page. Right, that's my point. Yes. Okay, so my point is in our case here, everything's in the same color. In the Dolphins case, the terms are in a different color. They're in aqua, so they stand out. So my question is, is there any Florida case that you're aware of where the hyperlinked terms are both in the same color as everything else? That is, they're not in a contrasting color like the aqua. And the hyperlinked terms of service are also beneath the acceptance button. So I would point to the Metro PCS case, which is the third district case, which is a text message. And there you have a situation where it's all one color, the whole thing. And the third district said that's good enough to provide you notice of the terms of service. And is it on the same page as and above the button? It is. It's all in one. It's a text message. So it's all in one place. It comes to you as a text message. That's my understanding of the Metro PCS case. Okay. And that's a text message, which is way less, obviously, you know, colorful or however you want to describe it. There's no contrast with text messages. Thank you. This is just trying to get an understanding of Florida law on this issue. You're arguing that the standard for determining conspicuousness is a totality, is a fact-intensive totality of the circumstances test, not that there are certain factors that are required for conspicuousness, correct? That's correct. It's just a question of contract law, which is would the person receiving the offer understand it to include these terms? And that's the incorporated term case law that we cite. And there's a few cases that I'd like to highlight on that in Florida law, which talk about, you know, contracts, attachments to contracts that are not even provided to the plaintiff. There's a case involving a warranty claim. And they said it was the AIA forms. I think it's called Macari, if I recall correctly. And that case talks about the idea that, you know, it said the AIA standard forms are part of this agreement. And that AIA form at the American Institute of Architects, I think, I'm not an architect, but I think that's what they were talking about, is incorporated. And therefore, they held them to the arbitration clause. So that's what I'm talking about, Judge Branch, when I talk about Florida law, is that there's no specific factors. And that also was, I didn't clearly articulate it, but that is exactly why we think that the district judge erred, is because he was too strict in terms of holding these agreements to specific requirements for conspicuousness with regard to notice. So I wonder if the Metro PCS case is a little bit different. Because in that case, we're talking about a monthly text message to the customer where the company sends a payment reminder that says, please pay $70 by whatever date for the account number to avoid service interruption. Terms and conditions apply. And it's all just right there. And then after the payment is made, the company sends a confirmation that reiterates that terms and conditions apply. And they do this every single month. And it's both before the payment and after the payment. And it seems like maybe that is different than this situation where we have the one BrowseRap, because that's not even really a BrowseRap kind of situation. We've got the BrowseRap situation. Why is that not different? I don't think it's different, and here's why. The way that you describe that, there's two transactions, right? One is an offer that says it's due, and we're going to take remedies or whatever might be under the contract if you don't pay for your phone. And the other is we're continuing our relationship. So those are two separate offers. If you look at MetroPCS, if you want to dive into what that means in terms of contract law. So that's a distinction that matters, because their position below was this isn't an element of the offer. It's not part of what I agreed to, yet I agreed to all the other elements. And that's also in our briefs, Your Honors, is Florida law doesn't allow you to be selective. And of course, I've pointed out to the case with the AIA agreements, but we cite many in the brief which talk about the idea that you can't say, I want these ports of the contract. And there's a federal case also from this court, and I know he does a lot of work in the Middle District, so I'll probably mispronounce his name, but Mr. Wyand was the plaintiff in the case. And it talks about the idea that you can't just agree to the terms of the contract and then say, oh, there's an arbitration clause that doesn't apply to me. That case involved a receiver, and that's obviously far more complex in terms of fact-finding and looking at the documents. And this court said, no, because you took actions under the contract as a matter of Florida law, you have accepted the terms of that contract, and therefore that's binding on you under applicable law, which includes Florida law and the Federal Arbitration Act. So I think that's the other distinction that matters. And that's why, again, as a matter of Florida contract law, the offer itself here is clear enough to include it. Even if you set aside seeing it, you also have the performance aspect of it, which is that you take on the service, which the district judge in his orders talked about. He said, oh, well, all these other terms, he agreed to them. Well, it's one performance. And that's our view, Your Honor. Thank you very much. You've reserved five minutes. And Mr. Phillips, we're going to give you an extra two minutes because we took Mr. Gelden's over by that. But again, you don't feel like you need to use it. Of course, you're welcome to, but it's available, but it's not required. Thank you, Your Honor. I may have pleased the court. My name is Jacob Phillips. I represent the plaintiff. The issue on appeal is whether Judge Huck erred and finding that the defendant failed to meet their burden to show that a reasonably prudent person would have been on notice that he or she was agreeing to a terms of service provision that contains an arbitration provision. As my colleague just conceded, and as they conceded in their brief, under whatever standard that applies, we all agree it's a fact-intensive, totality of the circumstances type standard. That was the standard that was applied, and Judge Huck made what were essentially factual findings based on the design of the website and found that a reasonably prudent person would not have been on notice, or at least it's reasonable to so find. There's a couple of things being conflated here. One is the standard of review. The other is sort of this difference between actual notice and inquiry notice. What defendant is arguing is that the plaintiff is trying to say, oh, I agreed to all parts of the contract, but I didn't agree to arbitration. That is not true. Plaintiff is saying, I didn't agree to the terms of service, which contains it was like 30 pages long. What plaintiff agreed to was to pay money in order to get the pre-recorded access to the pre-recorded videos, which is the product that the defendant sells. That's what the plaintiff agreed to. They did not present any evidence that the plaintiff actually was aware of the terms of service. That's the problem with a lot of the cases that are cited, is that if a defendant puts forward evidence and meets their burden showing that a plaintiff was actually subjectively aware, then what the case law says is that the plaintiff cannot rebut that by just saying, no, I didn't. I closed my eyes, or something like that. We're not talking about actual notice here. We're talking about inquiry notice. The question isn't whether plaintiff subjectively saw the terms of service and was aware that he was agreeing to it because they presented no evidence of that and plaintiff had nothing to rebut. The question is would a reasonably prudent person, should a reasonably prudent person have noticed? And again, that is a fact-intensive question. So you've said it's a fact-intensive, totality-of-the-circumstances inquiry, but are you pointing to any Florida case law that cases that provide that certain features are required for a hyperlink to be conspicuous? In other words, does a hyperlink always have to be in a contrasting color? Or does a hyperlink always have to be above the action button? I do not believe that there is any law from this circuit or from the Florida Supreme Court that says that goes either way. I don't think there's any law that says you have to do this, and I don't think there's any law that says if you don't do this, then that's a failure. What the case law says is that there aren't those bright-line rules. The bright-line rule is that if you have a click-wrap agreement, those are enforceable, right? And so we pointed to law also that says that's also been true for like 10 or 15 years now, and there's like 100 cases saying that. So companies know what they need to do in order to have enforceable terms of service, including an enforceable arbitration provision. All they have to do is have a click-wrap agreement. That's kind of the bright-line. And then browse-wrap are generally not enforceable unless you can show that a reasonably prudent person should have noticed it. Beyond that, once we're in the world of browse-wrap, though, no, there's not any bright-line rules from any court that I'm aware of that says if you do this, that's definitely enough. If you don't do this, that's definitely not enough. What we have is individual courts looking at individual websites and coming to individual decisions, sometimes finding that it's enough, sometimes finding that it's not. In fact, one of the supplement authorities that they just filed was the, and I'm forgetting the name of it now, it was a couple days ago, but it was the one from the Southern District of Florida where it was Judge Leibovitz and he basically looked at a very similar website, but came out the other way. And he actually cited Judge Huck's opinion, didn't necessarily disagree with it, kind of found a very fine distinction, and kind of went the other way. But really what it was, was Judge Leibovitz acting as a fact-finder coming to one decision, Judge Huck acting as a fact-finder and coming to a different conclusion, right? That's what judges are doing across the country. And so what we would say is that what Judge Huck, the conclusion that he came to was not clear error when it comes to the factual findings and there has been no suggestion that he applied some sort of incorrect legal standard. And so while this court does review de novo questions of law, we don't have a contract interpretation issue here, we don't have a question of law. Mr. Gelden says that this decision is wrong under Metro PCS and Metro PCS would require the opposite conclusion. So I just want to give you an opportunity to respond to that. If someone who gets, first of all I'll say about Metro PCS, not only was there the two instances where they were informed and probably way more than two if it was happening every single month, but also if you get a text message and the only text, the only words that you're looking at in a text message, we've all gotten text, you're looking at it, the only thing it says is pay here or lose your service, also see these terms of condition. Yes, that's a reasonably prudent person would be on notice that there are terms and conditions that apply. And there's also the ongoing relationship that was what the Uber case pointed out as well, like if you have a monthly subscription, let's say, if you're paying every single month, if you're getting a text message every single month, then that's different. Here, there was not a text message that only said two things. There was information about the prerecorded videos and there's a huge red button that says pay here and then there's the little font and there's tons of content on the page. It's cluttered. That's part of the point that Judge Huck was making is that the overall clutter of the page militates in favor of finding that the person is not on notice, whereas just getting a text message that says two things and it's all the same, that militates in favor, at least according to that. So you would agree that the simpler the page, the more likely it is that the hyperlink is conspicuous enough? Yeah, that's absolutely one of the factors that courts generally agree on. One of the four or five factors that they give is the overall clutter of the page. And so if the page says pay here, also see our terms of service all on the same font, all on the same side, sure, reasonably prudent person would probably notice that. So I assume you will not agree that this is a relatively simple webpage, correct? I do not think that it is a relatively simple, comparatively speaking, I don't think so. But there are cases, I think you have also cited Berman, which is a Ninth Circuit decision, where they are, the pages have a lot of images and a lot of colors, which are decidedly more complex than the page at issue here, correct? I do not remember the last time that I saw the Berman page, but sure, we're not suggesting this is the most cluttered website that I've ever seen. But considering all of the factors, it was not clear error for Judge Huck to make the decision that he made. The other issue that they've brought up is the manifestation of assent that plaintiff can't manifest assent the way that they were told they could, and then deny that a contract was signed. But here, the question is not how the plaintiff manifested assent, but what the plaintiff was manifesting assent to. So clearly, the plaintiff did what the webpage says, he manifested assent to pay money in order to get the videos that he wanted to see. That's not at issue here. The question is whether he manifested assent to the terms of service, and that question again turns back into whether a reasonably prudent person would have known that they were agreeing to the terms of service, which then contains the arbitration clause. So the District Court faulted the hyperlink for not being bolded, blue, or enlarged, but why is underlining not enough? Considering all of the factors, so you can have an underline that's just supposed to apply emphasis, or you can have an underline that is clearly a hyperlink. And so what courts have said, and general best practices for website design is, is if you want a person to know that this isn't just words on the screen, this is going to take you to another page, generally the contrasting color is what provides that. Even if you're, I mean, I'm not sure what your honors all use for emphasis when you use emphasis in your writing, but some people do underline just to provide emphasis. Right, but here it says, by subscribing, you agree to our terms of service, underlined, and privacy policy, underlined. Why would a reasonable person not perceive that to be a hyperlink? Both of those. So the first problem we have is that a reasonably prudent person would not notice it, or may not notice the text at all, right? It's only a secondary question as to whether, if they did notice it, would they know that it's a hyperlink. And one of the points that Judge Huck made, which I think is well taken, is that immediately after that, there was then text about, you have to be 16 years of age, it'll be charged to your iTunes account, it had a couple of proposals like that. And so the point that he was making is that a reasonable person could see that and then think that what they're referring to is the next three statements or whatever that says you have to be 16, we're going to charge your iTunes account, blah, blah, blah. An opposing counsel would argue, and has argued in their briefing, that that cannot be true, because the text of this screen says, by subscribing, you agree to our terms of service and privacy policy, and represent that you are at least 16 years of age, thereby separating out the age requirements so that nobody thinks, oh, that is in fact the terms of service and or the privacy policy. And that may be a factor for a fact finder to consider in deciding whether a reasonably prudent person would know that they were agreeing to a separate terms of service page. But it's not dispositive. And given all so, that's an argument, you know, and that's something that was presented, and it could have been presented to a jury if we had gone to a jury, but it's not dispositive. There's other factors included in the standard of review here for the court. It's whether, given the totality of the circumstances, and Your Honor may be right that that's one of them to consider, would a reasonably prudent person have been on notice. To address some of their case law real quick, while I still have a couple of minutes, we would just point out that in the Dye case, which was referenced in their brief, and again, here in oral argument, what happened in that case was there were shingles that were sent to a roof, and every single one of the shingles had the full terms, including the arbitration provision, written out. So effectively what we had in Dye, what Judge Newsom was pointing out, what we had in Dye was the equivalent of a click wrap agreement, right? A click wrap agreement is where before you can do whatever the service is, whatever the call of action is, you have to separately click a box that says I've read these terms of service and I agree to abide by them, right? That's effectively what we had in the shingles case was that the entire, not just the entire arbitration provision but the entire terms of service was physically given to the plaintiff. The real question in Dye was whether it was enough that it was the roofing company that opens the shingles rather than the homeowner. But there's no question that the, you get a click wrap agreement even in this context, it's enforceable. That's effectively what we had in Dye. And then as for the standard of review, I would just point out that all of their case law and their replies, since we didn't have a chance to rebut it, where they're talking about no, no, no, you only review it de novo and all of those cases, the question was one of the scope of the arbitration provision or a question of agency like Dye which is a question for law, a question of law for the court. But there is no question that under this court's precedent and under Florida precedent that in the context of arbitration, which is held to a summary judgment standard, just like if we were here on the summary judgment standard review, questions of law reviewed de novo, questions of fact are reviewed for clear error. Unless the court has further additional questions, I'll give the rest of my time back to the court and just ask that the order on appeal be affirmed. Thank you, Mr. Phillips. And Mr. Geldins, you've got five minutes. I want to start by asking you a question, just sort of out of curiosity. Am I correct in my understanding that CLCCRAP agreements are enforced as a matter of law? I think CLCCRAP's agreements enjoy a presumption in favor of enforcement. I don't recall a specific case that says that they're always enforced. Why then, and I mean just out of curiosity, why then, what is the advantage or why would a company use a browse wrap when they know they'd be on stronger footing with a CLCCRAP? I know obviously browse wraps are permissible, they're enforceable in certain cases, but I'm wondering what the... Well, I'm not a coder and that brings me to the point that I'd like to present on rebuttal for one of their arguments, which is there's no evidence in this case. All this stuff about a reasonable person or... So are you going to answer my question? The answer is I don't know, because I don't know why a CLCCRAP would be used versus a browse wrap, but I would imagine, and that's why I said I'm not a coder, is that it relates to perhaps how you design a website and in particular how it works on an iOS device. It's hard to imagine that if you're designing a website that a CLCCRAP is that much more challenging to make than a browse wrap, but maybe I'm just mistaken. I don't know the answer to that, Your Honor. This doesn't sound right. What we have here is a browse wrap and they exist pretty clearly, and of course there's the idea of the browse wrap-CLCCRAP hybrid, which is what Judge Leibowitz was talking about in that opinion. But the other point I'd like to address is their characterization of the DIE case and as I said in my argument, the DIE case it talks about agency law and the reason it talks about agency law is because it contributes the acceptance to someone who didn't see it, who didn't do anything other than accept the product. So that's the reason that the DIE case matters here is because this Court applying for law had determined that if the roofers went ahead and used it, and there's some language in that case that says everybody knows that when you accept a product there's certain terms, and whether or not it's the whole arbitration agreement that's wrapping the shingles and every single hazard doesn't matter because the plaintiffs in that case didn't see it. So every time that they deployed this Court that the plaintiff didn't see or didn't read or that we didn't show that he did, it doesn't matter because the legal inquiry for the Court is whether or not given the claim, unsubstantiated, that he didn't see it, this Court can still enforce the agreement that he did everything else to show that he agreed to. And that's why, Your Honor, this is a there's reversible error. And I just want to check my notes again and make sure that I've got... If you're going to go down this road of a browse wrap agreement and there are these cases out there saying that things like the color, the contrasting color, the placement of the text and so forth matter. I mean, here, your client basically did everything that Courts and I assume experts would say not to do. They place it after the button that you click on to agree to it. It's in the same color as all of the other text floyd. It's so small. There's additional language about seemingly contractual language that follows it. So it seems like they're doing almost everything they can to hide it. I mean, if we're going to hold a plaintiff responsible for an arbitration agreement, sure. If the plaintiff sees arbitration agreement and they're on notice of it, that's one thing. But if you have a company that's doing everything it seems like everything that they can to hide the arbitration agreement, why should we enforce that? Again, I would say that that's an attribution of a motive, which again is a factual finding that we have no basis in the record to conclude. More importantly, there's no rule that says that you have to have certain colors and that's what Judge Branch asked about. And I've seen no authority that says that there's a specific framework. Although precedent may apply, that's really just a question of individual Courts deciding things. That's why this Court doesn't have a specific bright line that says this is what you have to do. And moreover, Your Honor, I would point you to the Walshine case that we cited in our briefs, which is out of the Fourth District. And that's the case where the doctor said, oh, I signed the agreement, but I didn't really, I didn't intend to sign specific parts and it was a paragraph in the agreement. And again, that's why we go back to where the District Court said, there's a sentence here and that sentence includes this hyperlink. So there's two steps you take, which is one, what does that sentence consist of? And as Judge Branch pointed out, it says and. And so the rest of it is incorporated, but also the hyperlink operates just like a staple would operate in a paper agreement or an exhibit to the agreement. You can't get up in Florida and say, I didn't agree to the exhibits to the agreement, which is exactly what happened in the Wyand case where he said, oh, there's this agreement, it's buried, I was trying to do effect as receiver of these other things, but not this particular thing I don't have to arbitrate. And so that's why, given the Federal Arbitration Act's favoring of arbitration agreements, so long as this meets Florida law's minimum standard, you have to reverse. And I thank you for your time, Your Honors. Thank you, Counsel. We'll be in recess until tomorrow.